# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:97-CR-00249-GCM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MILAS HENRY MACK,<br><br>Defendant. | **ORDER** |

This matter is before the Court on Defendant Milas Henry Mack's Motion for Compassionate Release (Doc. No. 48) pursuant to 18 U.S.C. § 3582(c)(1)(A). Upon careful consideration of the arguments submitted by the parties, Defendant's Motion is **DENIED**.

## I. BACKGROUND

Between 1992 and 1997, Defendant participated in a violent and widespread drug-trafficking conspiracy responsible for distributing crack cocaine in Charlotte, North Carolina. (Doc. No. 37, ¶¶ 1, 6.) The members of the conspiracy, including Defendant, used firearms to commit drug-related robberies, assaults, and murders. (*Id.* at ¶ 6.) They also sold fake cocaine. (*Id.*) Defendant was responsible for distributing between 50 to 150 grams of crack cocaine. (*Id.*)

In October 1992, Defendant and a co-conspirator, Michael Jones, were offered $10,000 to kill a drug dealer by another one of their co-conspirators. (*Id.* at ¶ 8.) Defendant and Jones went to the victim's apartment, and Jones fired 14 or 15 rounds at the victim, injuring, but not killing the victim. (*Id.*) There were at least eight other instances in which Defendant used a firearm during drug-related robberies through 1996. (*Id.* at ¶¶ 7-18.) During one of these robberies, a victim was killed by one of Defendant's co-conspirators. (*Id.* at ¶ 15.) Defendant then threatened to kill a

witness to the murder by promising to "kill [her]" if she said anything. (*Id.* at ¶ 16.) In another robbery in 1995, Defendant threatened to kill a witness's family if she spoke to anyone about the crime. (*Id.* at ¶ 17.)

When Defendant was arrested, he had previously been convicted of four counts of breaking and entering, robbery with a dangerous weapon, and three drug-trafficking offenses. (*Id.* at ¶¶ 39-44.) He had been sentenced to 10- and 14-year terms in prison. (*Id.*) Defendant had a history of consistently violating the terms of his probation or parole; and was on parole when he committed his offenses. (*Id.* at ¶¶ 39-44, 46.)

A federal grand jury indicted Defendant and charged him with conspiracy to possess with intent to distribute, and to distribute cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. §§ 846, 841)(a)(1); and five counts of using a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1). (*Id.* at ¶ 1.) Defendant pleaded guilty without a plea agreement to all six counts. (*Id.* at ¶ 4.)

This Court's probation office submitted a presentence report, calculating a total offense level of 42 and classifying Defendant as a career offender. (*Id.* at ¶¶ 32-33.) The Sentencing Guidelines called for a sentence of between 360 months and life in prison for the drug-trafficking offense; and a consecutive sentence of five years in prison for the first § 924(c) firearm offense, and consecutive terms of 20 years in prison for the remaining four § 924(c) firearm offenses, for a total of 85 consecutive years. (*Id.* at ¶ 74.) Defendant faced a statutory range of 10 years to life in prison for his drug-trafficking offense; and a mandatory consecutive sentence of five years for the first § 924(c) firearm offense, and a mandatory consecutive sentence of 20 years for each of the remaining four § 924(c) firearm offenses. (*Id.* at ¶¶ 73.)

2

This Court was required to sentence Defendant to 360 months in prison for the drug-trafficking offense, a consecutive term of 60 months in prison for the first § 924(c) offense, and four consecutive terms of 240 months in prison for the remaining § 924(c) offenses, for an aggregate term of 1,380 months in prison. (Doc. No. 27.)

In August 2020, Defendant filed a compassionate release request to the warden of his Bureau of Prisons facility. (Doc. No. 51-1.) Defendant's request was premised on the COVID-19 pandemic, alleging pre-existing medical conditions. (*Id.*) The warden denied his request, stating that Defendant did not meet the criteria under the Debilitated Medical Condition of 18 U.S.C. §§ 3582(c)(1)(1) and 4205(g). (Doc. No. 51-2.) In July 2021, this Court granted Defendant's motion under § 404 of the First Step Act, thereby reducing his sentence for his drug-trafficking offense to 240 months in prison, for a reduced aggregate sentence of 1,260 months in prison. (Doc. No. 46.)

While in the Bureau of Prisons, Defendant has received completed at least 47 educational and work programs, including obtaining his GED. (Doc. No. 44.) He has received four disciplinary citations between 2009 and 2014, including possessing stolen property and possessing a non-hazardous tool. (*Id.*) Defendant is now 60 years old and has served 26 years in prison. (*See* Doc. No. 48 at 2.)

Defendant again moves for compassionate release, asserting that he is serving an unusually long sentence and that sentence is an extraordinary and compelling reason to grant him compassionate release. (*See id.*) Specifically, Defendant requests a reduction to time served or in the alternative, a 60-month reduction for a total of 31 years in prison. (*Id.* at 4.)

## II.     DISCUSSION

### A. Standard of Review

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a defendant's sentence, after considering the sentencing factors in § 3553(a), if the court determines that (1) extraordinary and compelling reasons warrant a sentence reduction and (2) a sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement applicable to compassionate release requests is Sentencing Guidelines § 1B1.13. While the Fourth Circuit held in *United States v. McCoy* that § 1B1.13 was not an "applicable policy statement" limiting a district court's authority to grant compassionate release because the Sentencing Commission had not amended § 1B1.13 to incorporate changes to § 3582(c)(1)(A) made by the First Step Act, 981 F.3d 271, 282 (4th Cir. 2020), the Sentencing Commission has since amended § 1B1.13, effective November 1, 2023. The amended policy statement now governs Defendant's motion for compassionate release.

As amended, § 1B1.13 authorizes this Court to grant a motion for compassionate release if the Court finds that extraordinary and compelling reasons warrant a sentence reduction and that the defendant is not a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a). Section 1B1.13(b) outlines six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release: (1) medical circumstances of the defendant, (2) the age of the defendant, (3) a defendant's family circumstances, (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury," (5) "other reasons" similar in gravity as those articulated in (1) through (4), and (6) an unusually long sentence. In reference to the last factor, subsection (6) states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

The factors in § 3553 are considered when imposing sentences and include, amongst others, (1) the nature of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide the defendant with needed educational or vocal training, medical care, or other correctional treatment, (3) the kinds of sentences available, (4) the need to avoid unwarranted sentence disparities among defendants with similar records, and (5) the need to provide restitution to victims.

### B. Analysis

Defendant contends that the elimination of the stacking of sentences under 18 U.S.C. § 924(c) pursuant to the First Step Act of 2018 constitutes an extraordinary and compelling reason for a reduction in his sentence. (*See generally* Doc. No. 48.) If Defendant were sentenced today, he would receive a sentence of no more than 5 years in prison for each of his five § 924(c) sentences. *See* 18 U.S.C. § 924(c)(1)(A)(i). Combined with a 240-month term for Defendant's drug-trafficking offense, his firearm convictions would have likely resulted in an aggregate sentence of 540 months in prison. The Government concedes that Defendant is currently serving an "unusually long" sentence, that he has served at least 10 years of that sentence, and that the difference between his current sentence of 1,260 months in prison and the 540-month sentence he

would likely receive today is sufficiently disparate to satisfy § 1B1.13(b)(6). (*See* Doc. No. 51 at 7.)

However, the Government claims that the Sentencing Commission overstepped its delegated authority by promulgating § 1B1. 13(b)(6). (*Id.*) The Government argues that nonretroactive changes in the law as "extraordinary *and* compelling reasons" justifying sentence reductions contradict precedent and the plain language of § 3582(c). (*Id.*) In short, the Government contends that § 1B1. 13(b)(6) is invalid because it exceeds the Sentencing Commission's Congressionally delegated authority and any disparity between Defendant's sentence and the sentence he would receive today is the consequence of Congress's decision to not make the First Step Act's change to § 924(c) applicable to defendants who have already been sentenced (*Id.* at 8-10.)

The Government also argues that the factors in § 3553(a) weigh against compassionate release due to the violence inflicted by the Defendant on victims and the community. (*See id.* at 16.) The Court agrees with the Government that the factors outlined in § 3553(a) do not favor compassionate release even if Defendant could demonstrate "extraordinary and compelling reasons" justifying a sentence reduction. Defendant was involved in multiple violent robberies, during one of which a victim was killed. Furthermore, Defendant agreed to participate in a killing-for-hire effort that resulted in a victim being shot 14 or 15 times and he threatened to kill more than one of the witnesses to his crimes. Defendant's criminal misconduct was violent and frequent prior to his incarceration. He also has a lengthy criminal history which includes breaking-and-entering, robbery with a dangerous weapon, and drug-trafficking offenses. The Court acknowledges that while Defendant has performed relatively well in prison, he has not shown that he no longer presents a threat to the community. Considering Defendant's violent conduct, his

6

Case 3:97-cr-00249-GCM    Document 52    Filed 06/17/24    Page 6 of 7

criminal history, the need to protect the public, and the need to deter Defendant and others from committing similar crimes, the § 3553(a) factors weight against a sentence reduction.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release (Doc. No. 48) is **DENIED**.

Signed: June 17, 2024

Graham C. Mullen
United States District Judge